UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

VIETNAM REFORM PARTY,

Plaintiff,

v.

VIET TAN - VIETNAM REFORM
PARTY, et al.,

Defendants.

Case No. 17-cv-00291-HSG

**ORDER GRANTING IN PART AND
DENYING IN PART PLAINTIFF'S
MOTION FOR DEFAULT JUDGMENT**

Re: Dkt. No. 86

On January 20, 2017, Plaintiff Vietnam Reform Party filed this trademark action against

Defendants Viet Tan—Vietnam Reform Party ("VT Corp."), as well as individuals Nguyen Thanh

Tu and Michelle Duong. Dkt. No. 1. Since then, only Defendant Tu has appeared. *See* Dkt. No.

50. Defendant Tu and Plaintiff entered into a settlement agreement, and Defendant Tu has since

been dismissed with prejudice from this action. Dkt. No. 84. Plaintiff now seeks default

judgment against the remaining Defendants, VT Corp. and Ms. Duong. Dkt. No. 86 ("Mot."). For

the reasons detailed below, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's

motion.

## I. BACKGROUND

### A. Plaintiff's Allegations

Plaintiff describes itself as an unincorporated organization that "aims to establish

democracy [in] and reform Vietnam through peaceful and political means." Dkt. No. 1

("Compl.") ¶¶ 1, 15. According to Plaintiff, the organization is well-known within the

Vietnamese community in the United States and internationally under the names "Vietnam

Reform Party," "Việt Nam Canh Tân Cách Mạng Đảng" (purportedly the Vietnamese translation

of "Vietnam Reform Party"), "Viet Tan," and "Việt Tân" (purportedly the Vietnamese spelling of

"Viet Tan") (collectively, the "Marks"). *Id.* ¶ 21. Plaintiff broadcasts a daily radio program to audiences in Vietnam (also available online), organizes political seminars in the United States, and disseminates information through pamphlets and other publications. *Id.* ¶¶ 24–26.

Plaintiff alleges that in August 2016, Defendant Tu formed and incorporated VT Corp. in California "for the sole, improper purpose of interfering with Plaintiff's ongoing business and political activities and attempting to usurp control of Plaintiff's Marks." *Id.* ¶ 30. Defendant Tu purportedly chose the name to create confusion among the public and interfere with Plaintiff's business and political activities. *Id.* ¶ 31. To that end, Defendants began contacting various individuals and entities which had relationships with Plaintiff and threatened to commence legal action against them, unless they removed all mention of Plaintiff's Marks. *Id.* ¶¶ 32–38. Based on these facts, Plaintiff asserts the following causes of action: (1) federal trademark infringement in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (2) unfair competition under Cal. Bus. & Prof. Code §§ 17200 *et seq.*; (3) unfair competition under California common law; (4) trademark infringement under California common law; (5) trademark dilution under Cal. Bus. & Prof. Code § 14247; (6) and declaratory relief. *Id.* ¶¶ 41–76. Plaintiff seeks declaratory relief confirming that it owns the Marks at issue and Defendants have infringed on those Marks, as well as injunctive relief enjoining Defendants' future infringement. *Id.*, Prayer for Relief ¶¶ 1–7.

### B. Procedural History

Plaintiff filed this action on January 20, 2017. Dkt. No. 1. It did not purport to complete service on all Defendants until the end of April 2017. Dkt. Nos. 14, 15, 24. Although Defendants had not appeared at that time, Plaintiff's counsel indicated that he had been in contact with at least Defendant Tu's attorney for purposes of settlement. *See* Dkt. Nos. 17, 25. In July 2017, Plaintiff reported that it had not been successful in settling with Defendant Tu. Dkt. No. 34. Plaintiff then filed a motion for entry of default on July 27, 2017, and on July 31, 2017, the clerk entered default as to all Defendants. Dkt. Nos. 37, 38.

Defendant Tu appeared in October 2017 and moved to set aside default. Dkt. No. 44. At the hearing on Plaintiff's motion for default judgment on January 4, 2018, the Court informed Plaintiff that Plaintiff did not properly serve Defendants VT Corp. and Duong, with the

consequence that the Court would not grant its motion for default judgment. Dkt. No. 66 at 3:7–24, 9:21–10:4. Counsel for Plaintiff agreed to withdraw the motion and remedy the service issue. *Id*. at 10:5–6. On January 12, 2018, Plaintiff filed a certificate of service purporting to reflect successful and proper service of Defendants VT Corp. and Duong. Dkt. Nos. 68, 69.

Defendant Tu and Plaintiff entered into a settlement agreement with the assistance of Magistrate Judge Joseph C. Spero. *See* Dkt. No. 79. They then filed a stipulation to dismiss with prejudice Defendant Tu, which the Court granted on December 27, 2018. Dkt. Nos. 84, 85. Plaintiff then filed this motion for default judgment against Defendants VT Corp. and Duong. *See generally* Mot. Neither Defendant VT Corp. or Defendant Duong appeared at the hearing on Plaintiff's current motion for default judgment. *See* Dkt. No. 39. And as of the date of this order, those Defendants still have yet to make an appearance.

## II.    LEGAL STANDARD

When a party has failed to plead or defend against a complaint, the clerk "must enter the party's default." Fed. R. Civ. P. 55(a). Following an entry of default, the Court may enter a default judgment upon request. Fed. R. Civ. P. 55(b)(2). However, the Court's decision to enter a default judgment is "discretionary." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). When default has been entered, the "factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987).

In assessing a request for default judgment, the Court has an "affirmative duty" to examine its jurisdiction over "both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). The Court must also determine whether service of process on Defendants was proper. *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1054 (N.D. Cal. 2010); *cf. Mason v. Genisco Tech. Corp.*, 960 F.2d 849, 851 (9th Cir. 1992) (holding default judgment invalid due to improper service, even where defendant had actual notice of the action). Upon determination of jurisdiction, the Court then evaluates the merits of the default judgment request based on seven factors (the "*Eitel* factors"): (1) the possibility of prejudice to Plaintiff; (2) the merits of Plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action;

(5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *See Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

## III.    DISCUSSION

### A.  Jurisdiction and Service of Process

In considering an entry of default judgment, a district court has an "affirmative duty" to examine its jurisdiction over "both the subject matter and the parties." *In re Tuli*, 172 F.3d at 712. A court must also assess whether there was proper service of process on the defendant. *Craigslist*, 694 F. Supp. 2d at 1054.

### i.  Subject Matter Jurisdiction

Federal district courts have original jurisdiction over all civil actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Because Plaintiff alleges federal trademark infringement under the Lanham Act, the Court has subject matter jurisdiction over this cause of action. As a result, the Court also has supplemental jurisdiction over the related state law claims. *See* 28 U.S.C. § 1367 ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

### ii.  Personal Jurisdiction and Service of Process

Defendant VT Corp. is incorporated in California and Defendant Duong is a resident of California. Compl. ¶¶ 10, 12; *see also* Dkt. No. 86-1, Ex. H.[1] Consequently, the Court has general jurisdiction over both Defendants. *See Daimler AG v. Bauman*, 571 U.S. 117, 134 (2014) ("The paradigm all-purpose forums for general jurisdiction are a corporation's place of incorporation and principal place of business."); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile."). However, "[s]ervice of process is the

---

[1] All exhibits referenced herein are attached to the Declaration of Do Hoang Diem in Support of Motion for Default Judgment ("Diem Decl."), Dkt. No. 86-1.

*mechanism* by which the court [actually] acquires the power to enforce a judgment against the defendant's person or property." *S.E.C. v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007) (quotations omitted and alterations in original). Service of process is "the means by which a court asserts its jurisdiction over the person." *Id*. Without proper service, the Court "has no power to render any judgment against the defendant's person or property unless the defendant has consented to jurisdiction or waived the lack of process." *Id.* at 1138–39.

Under Federal Rule of Civil Procedure 4(h), a domestic corporation may be served "by delivering a copy of the summons and the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B). Similarly, under Federal Rule of Civil Procedure 4(e)(2), individuals may be served personally, through a designated agent, or by leaving a copy at their "dwelling or usual place of abode with someone of suitable age and discretion who resides there." Fed. R. Civ. P. 4(e)(2)(A)– (C). Here, the Court finds that despite the initial unsuccessful attempts to serve Defendants VT Corp. and Duong, Plaintiff appears to have successfully completed service on January 12, 2018. *See* Dkt. Nos. 68, 69. The corporation's agent for service of process is Defendant Duong. Dkt. No. 86-1, Ex. H. The proofs of service state that the process server personally delivered the summons, complaint, and the clerk's notice of entry of default to Defendant Duong, as an individual and as the agent for VT Corp. Dkt. Nos. 68, 69. Based on the proofs of service presented, the Court finds that Defendants VT Corp. and Duong were properly served.

### B. The *Eitel* Factors

Having found that the preliminary requirements of jurisdiction and service of process are satisfied, the Court must evaluate the merits of the default judgment request based on the seven *Eitel* factors. *See Eitel*, 782 F.2d at 1471–72.

### i. Possibility of Prejudice to Plaintiff

First, the Court must consider the possibility of prejudice to Plaintiff. *Eitel*, 782 F.2d at 1471. Courts have found such prejudice when a defendant has failed to appear or defend against a suit, and the plaintiffs could not otherwise seek relief. *See, e.g.*, *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002); *Fulton v. Bank of Am., N.A.*, No.

216CV04870CASJCX, 2016 WL 7156440, at *3 (C.D. Cal. Dec. 6, 2016). Because Defendants VT Corp. and Duong have not appeared in this long-running action, Plaintiff would be prejudiced absent a default judgment because it would have no other recourse to prevent infringement by Defendants.

### ii. Merits of Plaintiff's Substantive Claim and Sufficiency of the Complaint

The second and third *Eitel* factors consider the merits and sufficiency of a plaintiff's claims. These two factors are often analyzed together and require courts to consider whether a plaintiff has "state[d] a claim on which [it] may recover." *PepsiCo*, 238 F. Supp. 2d at 1175. With the exception of facts relating to damages, courts must take as true all other factual allegations pled in the complaint. *TeleVideo Sys., Inc.*, 826 F.2d at 917–18. Of all the Eitel factors, courts often consider the second and third factors to be "the most important." *Sanrio, Inc. v. Jay Yoon*, No. 5:10-CV-05930 EJD, 2012 WL 610451, at *4 (N.D. Cal. Feb. 24, 2012); *see also Fulton*, 2016 WL 7156440, at *5. The Court now addresses the merits and sufficiency of each of Plaintiff's claims.

### 1. Trademark Infringement

To prevail on a trademark infringement claim under § 43(a), a plaintiff must establish that it (1) has a valid, protectable trademark that (2) defendant is using in a confusingly similar manner. *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999). "The core element of trademark infringement is the likelihood of confusion, *i.e.*, whether the similarity of the marks is likely to confuse customers about the source of the products." *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902 (9th Cir. 2007) (quotations omitted).[2]

---

[2] Because California trademark claims are "substantially congruent" with federal claims, the analysis under each regime is the same. *Grupo Gigange S.A. de C.V. v. Dallo & Co.*, 391 F.3d 1088, 1100 (9th Cir. 2004) ("As a general matter, trademark claims under California law are 'substantially congruent' with federal claims and thus lend themselves to the same analysis.'"). California unfair competition claims that sound in trademark are also subject to the same analysis. *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994) ("This Circuit has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act.").

Plaintiff alleges that the marks "Viet Tan" and "Vietnamese Reform Party" are entitled to a presumption of ownership and validity because they are registered with the United States Patent and Trademark Office ("USPTO"). Mot. at 7. The remaining marks, "Việt Nam Canh Tân Cách Mạng Đảng" and "Việt Tân," are not registered.[3]

As a general principle, "federal registration provides 'prima facie evidence' of the mark's validity and entitles the plaintiff to a 'strong presumption' that the mark is a protectable mark." *Zombondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010) (citing 15 U.S.C. §§ 1057(b), 1115(a)). Registration also "serves as 'constructive notice of the registrant's claim of ownership of the mark.'" *Matal v. Tam*, 137 S. Ct. 1744, 1753 (2017). If the plaintiff establishes that a mark has been properly registered, then the "burden shifts to the defendant to show by a preponderance of the evidence that the mark is not protectable." *Zombondo*, 602 F.3d at 1114.

The marks "Viet Tan" and "Vietnamese Reform Party" were not registered with the USPTO until July 17, 2018, after the Complaint was filed. *See* Dkt. No. 86-1, Exs. F, G. Registration could not have provided constructive notice of the alleged infringement to Defendants before Plaintiff filed its Complaint against them. *See SunEarth, Inc. v. Sun Earth Solar Power Co.*, 846 F. Supp. 2d 1063, 1083 (N.D. Cal. 2012) ("Further, a party is charged with constructive notice of a mark when it is placed on the principal register, *see* 15 U.S.C. § 1072, not when the application for a trademark is filed."). In any event, registering a mark first is not enough to establish ownership, because "the party claiming ownership must have been the first to actually use the mark." *Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547 F.3d 1213, 1226 (9th Cir. 2008) (quotations omitted). Therefore, the Court first analyzes whether Plaintiff has sufficiently

---

[3] Registration is not a prerequisite for protection under § 43(a), as "it is common ground that § 43(a) protects qualifying unregistered trademarks and that the general principles qualifying a mark for registration under § 2 of the Lanham Act are for the most part applicable in determining whether an unregistered mark is entitled to protection under § 43(a)." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). Section 2 of the Lanham Act states that subject to certain listed exceptions, "nothing in this chapter shall prevent the registration of a mark used by the applicant which has become distinctive of the applicant's goods in commerce." 15 U.S.C. § 1052.

alleged that it used the Marks before Defendants, and then whether those Marks are valid and protectable.

### i. Ownership

Plaintiff contends that it has used the Marks in connection with its political activities since it was formed in 2004. *See* Compl. ¶ 28; *see also id.* ¶¶ 17–22. Since 2004, Plaintiff has established a website, broadcast a daily radio program, organized seminars, distributed pamphlets and other publications, and conducted interviews using the Marks. *Id.* ¶¶ 23–28. In contrast, Plaintiff alleges that Defendant VT Corp. only starting using "Viet Tan—Vietnam Reform Party" on or around its incorporation date of August 9, 2016. Diem Decl. ¶¶ 22, 25. Before then, Defendants had made "no use of the Marks . . . other than to refer to Plaintiff Viet Tan." *Id.* ¶ 25. Based on these allegations, the Court finds that Plaintiff has sufficiently alleged it used the Marks prior to Defendants' use.

### ii. Valid and Protectable

To be valid and protectable, a mark must be "distinctive," which measures "the primary significance of the mark to the purchasing public." *Zobmondo*, 602 F.3d at 1113. In determining distinctiveness, courts are required "to consider standards of meaning not our own," but rather what the perception of the targeted public is. *Id.*

Trademarks are divided into five categories of increasing distinctiveness: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful. *Id.* "Arbitrary" and "fanciful" are the two strongest categories of marks that receive the highest degree of trademark protection. *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1141 (9th Cir. 2002). The third category, "suggestive" marks, include marks that do not "describe the product's features, but suggest[ ] them." *Kendall–Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1047 n.8 (9th Cir. 1998) (emphasis omitted). Examples include "Slickcraft" boats or "Air Care" for a service that maintains medical equipment for administering oxygen. *Id.*; *see also AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 349 (9th Cir. 1979), *abrogated in part on other grounds by Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 810 (9th Cir. 2003). "Descriptive" marks make up the fourth category. *Kendall–Jackson Winery*, 150 F.3d at 1047. An example of a descriptive mark is

"Honey Roast" for nuts roasted with honey. *Id.* at 1047 n.8. Because descriptive marks merely describe a characteristic of the product, they do not receive any trademark protection unless they acquire sufficient "secondary meaning" to create an association between the mark and the product. *Id.* at 1047. The final category of marks consists of "generic" marks, which "describe the product in its entirety" and are not entitled to trademark protection. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 632 (9th Cir. 2005). "Examples [of generic marks] include 'Liquid controls' for equipment that dispenses liquid, or 'Multistate Bar Examination' for a bar examination that may be taken across multiple states." *Id.*

The Court agrees with Plaintiff that "Viet Tan" and "Viêt Tân" are suggestive marks, which entitles them to protection without proof of secondary meaning. *See Sleekcraft*, 599 F.2d at 349 ("Although less distinctive than an arbitrary or fanciful mark and therefore a comparatively weak mark, a suggestive mark will be protected without proof of secondary meaning."). To distinguish between descriptive and suggestive marks, courts consider the "the imaginativeness involved in the suggestion . . . that is, how immediate and direct is the thought process from the mark to the particular product." *Id.* (citation omitted). To reach the conclusion that "Viet Tan" and "Viêt Tân," which translate to "New Viet," refer to a non-profit organization that engages in political activism, a "mental leap" is required. *See Zobmondo*, 602 F.3d at 1115 (9th Cir. 2010). It is not obvious that "New Viet" refers to a political organization that advocates for democratic reform in Vietnam, as opposed to, for example, a non-profit organization that has a different mission or provides other services in connection with the Vietnamese community. Accordingly, the Court finds that these two marks are suggestive.

However, the Court finds that "Vietnam Reform Party" and "Viêt Nam Canh Tân Cách Mạng Đảng" are descriptive, because these marks describe Plaintiff as a political organization seeking to reform Vietnam (in English and presumably in Vietnamese). For these marks to be protectable, Plaintiff thus must establish that they have acquired "secondary meaning." *See Kendall–Jackson Winery*, 150 F.3d at 1047. "Secondary meaning is achieved by an association between a name and a source." *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1015 (9th Cir. 1985). "When this mental recognition occurs among [the audience], the name

United States District Court
Northern District of California

becomes legally protectable as an identification symbol." *Id.* Factors considered when determining whether a descriptive mark has achieved secondary meaning include: "(1) whether actual purchases of the product bearing the claimed trademark associate the trademark with the producer, (2) the degree and manner of advertising under the claimed trademark, (3) the length and manner of use of the claimed trademark and, (4) whether use of the claimed trademark has been exclusive." *Id.*

The Court finds that Plaintiff has sufficiently pled that the marks "Vietnam Reform Party" and "Việt Nam Canh Tân Cách Mạng Đảng" have acquired secondary meaning. Plaintiff has used the marks to represent itself throughout the United States since 2004. Compl. ¶ 28. The organization is well-known throughout the Vietnamese community under the marks, as it organizes seminars around the United States using the marks, hosts a daily radio program available online using the marks, and disseminates publications using the marks. Compl. ¶¶ 21–27; Dkt. No. 86-1, Exs. B, C, and D. As a result of Plaintiff's activities and association with the two marks, Plaintiff has attained influence and prominence in communities involved in international political activism. The Court finds that Plaintiff has sufficiently shown that the marks are associated with Plaintiff's political organization and activities, such that it has acquired secondary meaning. *See Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 822 (9th Cir. 1996) (affirming district court's holding that non-profit organization's showing that it "conducted a significant amount of advertising of its name and business activities through public television, radio, newsletters, public hearings, and various meetings, lectures, hikes, school presentations and slide shows" was sufficient to prove its mark had acquired secondary meaning).

### b. Likelihood of Confusion

Having established that the Marks are valid and protectable, the Court next addresses whether consumers are likely to mistakenly believe that Defendant VT Corp. is "somehow affiliated with or sponsored by" Plaintiff. *See Cohn v. Petsmart, Inc.*, 281 F.3d 837, 841 (9th Cir. 2002); *see also Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1130 (9th Cir. 1998) ("[T]he question here is whether a reasonable consumer attending a [convention sponsored by the plaintiff] might do so believing that it is a convention sponsored by [the defendant].").

The Ninth Circuit has articulated an eight-factor test to determine the likelihood of confusion. 599 F.2d at 348–49. The "*Sleekcraft* factors" include: (1) the strength of the allegedly infringed mark; (2) the proximity of the parties' goods; (3) the similarity of the parties' marks; (4) the extent to which there is evidence of actual confusion; (5) the marketing channels used by the parties; (6) the degree of care likely to be exercised by the purchasers of the parties' products; (7) the alleged infringer's intent in selecting its marks; and (8) the likelihood of expansion of the parties' product lines. *Id*.

The *Sleekcraft* test is supposed to be "pliant," and the Ninth Circuit has warned against "excessive rigidity" in its application. *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir. 2008). Instead, "[t]he test is a fluid one and the plaintiff need not satisfy every factor, provided that strong showings are made with respect to some of them." *Surfvivor*, 406 F.3d at 631; *see also Dreamwerks*, 142 F.3d at 1129–32 (allowing case to proceed past summary judgment where the plaintiff overwhelmingly satisfied three *Sleekcraft* factors). "Although some factors—such as the similarity of the marks and whether the two companies are direct competitors—will always be important, it is often possible to reach a conclusion with respect to likelihood of confusion after considering only a subset of the factors." *Brookfield*, 174 F.3d at 1054 (9th Cir. 1999). Because each factor is not necessarily relevant to every case, the *Sleekcraft* test "functions as a guide and is 'neither exhaustive nor exclusive.'" *Metro Pub., Ltd. v. San Jose Mercury News*, 987 F.2d 637, 640 (9th Cir. 1993) (citation omitted). Courts have extensive discretion in determining how much weight to accord each factor based on the circumstances of the case. *See Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 304 F.3d 936, 941 (9th Cir. 2002).

With the Ninth Circuit's guidance in mind, the Court finds that certain *Sleekcraft* factors are not applicable in this context, given the nature of the activities in which Plaintiff and Defendants are alleged to have engaged. The Court therefore will focus its analysis only on the factors that apply in this unique case.

### i. First Factor: Strength of Mark

The purpose of examining the strength of the plaintiff's mark is to determine the scope of trademark protection to which the mark is entitled. *Entrepreneur Media*, 279 F.3d at 1141.

11

Strength is evaluated in terms of "conceptual strength" and "commercial strength." *GoTo.com, Inc. v. Walt Disney Co.,* 202 F.3d 1199, 1207 (9th Cir. 2000). Conceptual strength is determined by the mark's placement along the spectrum of inherent distinctiveness. *Id*. Commercial strength is measured through marketplace recognition. *One Indus., LLC v. Jim O'Neal Distrib., Inc.*, 578 F.3d 1154, 1164 (9th Cir. 2009).

As described above, with respect to conceptual strength, the Marks are either suggestive or descriptive and have acquired secondary meaning. Taking as true all factual allegations in the Complaint, the Court also finds that Plaintiff has sufficiently pled that the Marks are commercially strong because of its advertising and worldwide recognition. *See GoTo.com*, 202 F.3d at 1207 (9th Cir. 2000) ("The more likely a mark is to be remembered and associated in the public mind with the mark's owner, the greater protection the mark is accorded by trademark laws."). This factor weighs in favor of Plaintiff.

### ii. Third Factor: Similarity of Parties' Marks

"The similarity of the marks is 'a critical question in the likelihood-of-confusion analysis.'" *La Quinta*, 762 F.3d at 875 (citation omitted). To assess similarity, courts must "compare the two marks in terms of sight, sound, and meaning, considering the marks as a whole, as [they] appear in the marketplace." *Id*. (quotations and citation omitted). In this case, Defendant VT Corp.'s official incorporated name is "Viet Tan—Vietnam Reform Party." Compl. ¶ 29. It was incorporated on August 9, 2016. Dkt. No. 86-1, Ex. H. Because this is alleged to be the same name as Plaintiff's "Viet Tan" and "Vietnam Reform Party" marks, the Court finds this factor weighs overwhelmingly in favor of Plaintiff.

### iii. Fourth Factor: Evidence of Actual Confusion

Although Plaintiff alleges that the fourth factor favors it, the Court finds this factor has little weight. The fourth factor requires the Court to analyze whether there is evidence "that use of the two marks has already led to confusion." *Sleekcraft*, 599 F.2d at 352. "While '[e]vidence that the use of the two marks has already led to confusion is persuasive proof that future confusion is likely,' the converse is not true." *GoTo.com*, 202 F.3d at 1208 (citation omitted and alterations in original).

Plaintiff alleges that Defendants have written letters to various radio stations and news programs claiming that Defendants own the Marks and that "'Viet Tan' was not a legal entity but only a masquerade used by [Plaintiff] to conduct their mafia-like activities." *See* Dkt. No. 86-1, Ex. J. Defendant VT Corp. demanded that various news outlets de-publish and retract news stories that feature Plaintiff or face legal action. *Id.* As a result, according to Plaintiff, it is being removed from key political activities and publications. Diem Decl. ¶¶ 26–32. However, this does not demonstrate *confusion*: there is no allegation that the public believes VT Corp. is Plaintiff or vice versa. Instead, the record suggests that the public is now aware of some sort of ill-defined but heated conflict between the parties over who should be able to use the Marks. But because the absence of actual confusion "need not give rise to an inference of no likelihood of confusion," *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1360 n.10 (9th Cir. 1985), this factor carries essentially no weight here.

### iv.  Fifth Factor: Marketing Channels

The Court finds that the fifth factor, whether there were convergent marketing channels, weighs in favor of Plaintiff. As described above, Defendants have specifically targeted the same marketing channels (*e.g.* radio stations, newspaper publications) that Plaintiff uses in order to force those marketing channels to cease the promotion of Plaintiff's organization and political activities.

### v.  Seventh Factor: Defendants' Intent

The seventh factor weighs strongly in favor of Plaintiff, as Plaintiff contends that the sole reason for Defendant's use of the Marks was to interfere with Plaintiff's "ongoing business and political activities." Compl. ¶ 30. "[I]ntent to deceive is strong evidence of a likelihood of confusion." *Entrepreneur Media*, 279 F.3d at 1148 (quotations and citation omitted). "When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived." *Sleekcraft*, 599 F.2d at 354. "This factor favors the plaintiff where the alleged infringer adopted his mark with knowledge, actual or constructive, that it was another's trademark." *Brookfield*, 174 F.3d at 1059.

Defendant Tu allegedly formed VT Corp. because he believed Plaintiff was responsible for the death of his father and sought to retaliate against Plaintiff. Diem Decl. ¶ 21; *see* Dkt. No. 86-1, Ex. J (letter to Radio Free Asia stating that Plaintiff "remain[s] the prime suspects behind the killing of many Vietnamese American journalists, including my own father," and that he incorporated VT Corp. to "flush [members] out of their hiding"). Because VT Corp. allegedly was formed because of a personal vendetta Defendant Tu had against Plaintiff, the Court finds this factor weighs strongly in favor of Plaintiff.

### vi. Summary of *Sleekcraft* Factors

The Court finds that the remaining factors—proximity of goods or services, degree of care exercised by purchasers, and likelihood of expansion—are not relevant here and would not affect the Court's ultimate conclusion.

On balance, the Court finds that the applicable *Sleekcraft* factors considered in their totality weigh in favor of a finding that confusion is likely. Accordingly, based on the record before the Court, Plaintiff has sufficiently pled that Defendant VT Corp. infringed Plaintiff's Marks.

### 2. Trademark Dilution

The purpose of the Federal Trademark Dilution Act (the "FTDA") "is to protect famous trademarks from subsequent uses that blur the distinctiveness of the mark or tarnish or disparage it, even in the absence of a likelihood of confusion." *Moseley v. V Secret Catalogue, Inc*., 537 U.S. 418, 431 (2003). Accordingly, the FTDA extends dilution protection only to those whose mark is a "household name." *Nissan Motor Co. v. Nissan Comput. Corp*., 378 F.3d 1002, 1011 (9th Cir. 2004) (quotations and citation omitted). "For example, Tylenol snowboards, Netscape sex shops and Harry Potter dry cleaners would all weaken the commercial magnetism of these marks and diminish their ability to evoke their original associations. These uses dilute the selling power of these trademarks by blurring their uniqueness and singularity, and/or by tarnishing them with negative associations." *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 903 (9th Cir. 2002) (quotations and citation omitted).

Plaintiff brings a trademark dilution claim under California state law, which is subject to the same standards as a federal law claim. *See Jada Toys*, 518 F.3d at 634. To prevail on a dilution claim, "a plaintiff must show that (1) the mark is famous and distinctive; (2) the defendant is making use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark is likely to cause dilution by blurring or dilution by tarnishment." *Id.* Although neither federal nor California state law requires a showing of competition or likelihood of confusion to succeed on a dilution claim, the second element of the dilution analysis requires the plaintiff to establish that "the mark used by the alleged diluter [is] identical, or nearly identical, to the protected mark." *Id.* (*quoting Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 905 (9th Cir.2002)).

### a. Whether Plaintiff's Marks are Famous

The Court finds that Plaintiff has not sufficiently pled a trademark dilution claim, because even if Defendants' use of the Marks was likely to cause dilution, Plaintiff has not established that its Marks were famous by the time Defendants first made use of the Marks. To qualify as famous, the asserted mark must have "such powerful consumer associations that even non-competing uses can impinge on their value." *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 875 (9th Cir. 1999); *see also Apple, Inc. v. Samsung Elecs. Co., Ltd.*, No. 11–cv–01846–LHK, 2012 WL 2571719, at *7 (N.D. Cal. June 30, 2012) ("The Ninth Circuit has recognized that fame requires a high standard of consumer awareness beyond the trademark owner's specific market—the mark should be a 'household name' or 'part of the collective national consciousness.'"). "[T]o meet the 'famousness' element of protection under the dilution statutes, 'a mark [must] be truly prominent and renowned.'" *Avery*, 189 F.3d at 875. The bar for famousness is high, and the Ninth Circuit has routinely found commercially successful marks insufficiently famous to satisfy the standard. *See, e.g.*, *id.* at 876–77 (finding Avery and Dennison marks not famous despite decades of use, $3 billion in annual sales, and $5 million in advertising); *Fruit of the Loom, Inc., v. Girouard*, 994 F.2d 1359, 1362 (9th Cir. 1993) (finding that the "Fruit" mark "is far from being in the class" of "Tiffany," "Polaroid," "Rolls Royce," "Kodak," "Century 21," or "Oscar" marks).

Plaintiff alleges that it has used the Marks since 2004, that it is recognized internationally by its Marks, and that its Marks are famous and were associated with Plaintiff before Defendants began using the Marks in 2016. Diem Decl. ¶¶ 2–13; Compl. ¶¶ 17–29. Crucially, however, political prominence or recognition within its specific market does not make the Marks a household name, and Plaintiff fails to establish that its Marks were prominent enough to be part of the "collective national consciousness." *See Avery*, 189 F.3d at 875. There are no allegations that those not involved with international political activism would recognize Plaintiff's Marks. Accordingly, the Court finds that Plaintiff has not sufficiently pled trademark dilution, and the second and third *Eitel* factors thus weigh against Plaintiff for this claim.

### 3. Declaratory Relief

Plaintiff also moves for a declaratory judgment that Plaintiff's Marks have a "right to trademark protection." Mot. at 17. Under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), "[i]n a case of actual controversy," district courts may "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

For declaratory relief, there must be "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant issuance of a declaratory judgment." *Spokane Indian Tribe v. United States*, 972 F.2d 1090, 1092 (9th Cir. 1992) (quotations omitted). "The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *McGraw–Edison Co. v. Preformed Line Prods. Co.*, 362 F.2d 339, 342 (9th Cir. 1966) (citation omitted). The district court has "sound discretion" in deciding whether declaratory judgment is warranted. *Id.*

Plaintiff has alleged that there is a substantial controversy between Plaintiff and Defendant VT Corp. concerning the trademark and protectability of the Marks. As discussed in Section III(B)(ii)(1), *supra*, Plaintiff, taking the allegations in the Complaint as true, has sufficiently pled that it owns the Marks, the Marks are valid and protectable, and Defendants' use will cause a

likelihood of confusion. Entry of declaratory judgment here will clarify Plaintiff's rights

regarding the Marks and resolve the controversy. Accordingly, the Court finds that Plaintiff has

sufficiently pled a claim for declaratory relief.

#### 4. Defendant Duong

The Court does not find that Plaintiff has sufficiently stated a claim against Defendant

Duong for any cause of action. There are no allegations in the Complaint as to her acts as an

individual: the only references to her are that she was an agent of Defendants Tu and VT Corp.,

Compl. ¶ 4, and that one of the "cease and desist letters" was signed by her, *id*. ¶ 6; *see* Dkt. No.

86-1, Ex. I. However, this is not sufficient to plead liability as to Defendant Duong in her

individual capacity, as it tends to suggest that she was taking actions on behalf of VT Corp.

Although a permanent injunction against a corporation would bind its officers, *see Comm.*

*for Idaho's High Desert*, 92 F.3d at 824, there are no allegations that Defendant Duong was even a

corporate officer of Defendant VT Corp. Therefore, the Court finds that Plaintiff has not

sufficiently pled a claim of personal liability against Defendant Duong.

### iii. Sum of Money At Stake

Under the fourth *Eitel* factor, the court must consider the amount of money at stake in

relation to the seriousness of Defendants' conduct. *Eitel*, 782 F. 2d at 1471. Plaintiff in this case

seeks declaratory and injunctive relief, as well as reasonable attorneys' fees and costs. Compl.,

Prayer for Relief. Because Plaintiff is not seeking any monetary damages and only attorneys' fees

and costs, this factor weighs in favor of default judgment. *See Elec. Frontier Found. v. Glob.*

*Equity Mgmt. (SA) Pty Ltd.*, 290 F. Supp. 3d 923, 947 (N.D. Cal. 2017) (finding that because

plaintiff was not seeking monetary damages, the fourth factor favored entry of default judgment);

*PepsiCo*, 238 F. Supp. 2d at 1176–77 (same).

### iv. Possibility of Dispute Concerning Material Facts

The fifth *Eitel* factor examines the possibility of dispute between the parties as to any

material facts in the case. *Eitel*, 782 F.2d at 1471–72. As discussed above, Plaintiff has

sufficiently pled trademark infringement. *See* Section III(B)(ii)(1), *supra*. Even if there was a

possibility that Defendants could dispute Plaintiff's allegations, that would not change the Court's

analysis for present purposes because Defendants have not appeared to rebut the allegations. This factor thus weighs in favor of entry of default against Defendant VT Corp as to the trademark infringement claims.

### v. Default Due to Excusable Neglect

The sixth *Eitel* factor considers the possibility that Defendants' default resulted from excusable neglect. *Id.* at 1472. The proofs of service reflect that Plaintiff served Defendants with the summons, complaint, the clerk's notice of entry of default, and its motion for default judgment. *See* Dkt. Nos. 68, 69, 88. Defendants VT Corp. and Duong have not made an appearance and have not responded to Plaintiff's complaint or motion. As there is no evidence that Defendants' failure to appear is due to excusable neglect, this factor weighs in favor of granting default judgment.

### vi. Policy in Favor of Deciding Cases on the Merits

The seventh *Eitel* factor emphasizes that "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F. 2d at 1472. While this preference does not preclude a court from granting default judgment, *see PepsiCo*, 238 F. Supp. 2d at 1177, the general rule is that "default judgments are ordinarily disfavored." *Eitel*, 782 F. 2d at 1472. However, deciding the case on the merits is impossible where a party refuses to participate. This factor thus weighs against, but does not preclude, entry of default judgment.

\*       \*       \*

In sum, the majority of the *Eitel* factors favor default judgment against Defendant VT Corp. for Plaintiff's trademark infringement and related claims, but not its trademark dilution claim. The *Eitel* factors weigh against granting default judgment as to Defendant Duong.

### C. Remedies

The Court next turns to the relief Plaintiff seeks. Under Federal Rule of Civil Procedure 54(c), a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Plaintiff seeks declaratory relief, injunctive relief, and reasonable attorneys' fees and costs. Compl., Prayer for Relief ¶¶ 1–7.

### i. Declaratory Judgment

As discussed above in Section III(B)(ii)(3), *supra*, declaratory relief is appropriate in this action, as Plaintiff has sufficiently pled that there is an actual controversy between Plaintiff and Defendant VT Corp. as to the ownership of the Marks.

### ii. Permanent Injunction

Plaintiff is also entitled to permanent injunctive relief. Under the Lanham Act, the Court has the "power to grant injunctions according to the rules of equity and upon such terms as the court may deem reasonable, to prevent violation" of Plaintiff's rights. 15 U.S.C. § 1116(a). Here, Plaintiff requests that the Court issue a permanent injunction precluding Defendants VT Corp. and Duong from using all of the Marks, representing to the public that Defendants have a legal right to the Marks, and sending cease and desist letters asserting that Defendants have rights to the Marks. Mot. at 24. In addition, Plaintiff requests that Defendants issue a notice to each person or entity to which they have previously sent cease and desist letters, with a copy of the Court's order granting the permanent injunction, and to file with the Court a report "in writing under oath setting forth in detail the manner and form in which the Defendant has compiled with the injunction." *Id.* The Court finds that not all of the proposed injunctive relief is appropriate, and therefore will issue a permanent injunction consistent with the language set forth in Plaintiff's motion for default judgment, with the exception of the last two requests to order Defendants to issue notices and file a confirmation under oath with the Court. *See id.*

### iii. Attorneys' Fees and Costs

Finally, Plaintiff requests reasonable attorneys' fees and costs. Under 15 U.S.C. § 1117(a), plaintiff is entitled to costs if there is a violation under § 1125(a) or (d), or a willful violation of § 1125(c). 15 U.S.C. § 1117(a). Because the Court has found a violation of § 1125(a) (trademark infringement), Plaintiff is entitled to costs.

Section 1117 permits the recovery of reasonable attorney fees in "exceptional cases." *Id.* "A trademark case is exceptional for purposes of an award of attorneys' fees when the infringement is malicious, fraudulent, deliberate or willful." *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1384 (9th Cir. 1984). In considering whether this is an "exceptional case," the Court is

mindful that this case presents a unique set of circumstances. Plaintiff's Complaint and the materials in the record support the conclusion that Defendants willfully selected VT Corp.'s name to usurp Plaintiff's ownership of the Marks and interfere with Plaintiff's political activities. It sent cease and desist letters to Plaintiff's partners threatening to take legal action unless they disassociated themselves from Plaintiff. Dkt. No. 86-1, Ex. J. Because Defendants refuse to appear and participate, they cannot challenge these allegations. Based on these unique facts, the Court finds this case "exceptional" so as to warrant the award of attorneys' fees.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's motion for default judgment. Plaintiff's motion for default judgment is **GRANTED** against Defendant VT Corp. for its trademark infringement claims under the Lanham Act and California common law, and unfair competition claims under Cal. Bus. & Prof. Code §§ 17200 *et seq.* and California common law. The Court **GRANTS** Plaintiff's request for declaratory judgment that Plaintiff owns the Marks "Vietnam Reform Party," "Việt Nam Canh Tân Cách Mạng Đảng," "Viet Tan," and "Việt Tân," and Defendants have infringed on Plaintiff's rights to those Marks. The Court further **GRANTS** Plaintiff's request for permanent injunction, consistent with the language below:

> Defendant VT Corp. and all its officers, agents, servants, employees, and attorneys, and all those in active concert or participation with any of them, **ARE PERMANENTLY RESTRAINED AND ENJOINED FROM**:

> 1. Using "Vietnam Reform Party," "Việt Nam Canh Tân Cách Mạng Đảng," "Viet Tan," and "Việt Tân" (the "Marks"), or any confusingly similar version or variation of the Marks, in any jurisdiction in the United States, except to refer to Plaintiff.

> 2. Representing to any media, person, entity, or the public that Defendant has any rights to the Marks.

>> a. For purposes of the injunction, the term "person" shall be defined as set forth in 15 U.S.C. § 1127, which includes, but is not limited to, Plaintiff's members, the media, or any other person.

3.  Sending cease-and-desist-letters, or any other communication as defined in 18 U.S.C. § 2510, asserting any right to preclude others, including but not limited to Plaintiff, from using the Marks.

Plaintiff's motion for default judgment is **DENIED** as to its trademark dilution claim under Cal. Bus. & Prof. Code § 14247, and **DENIED** against Defendant Duong as to all claims. The Court further **SETS** a case management conference for September 3, 2019 at 2:00 p.m. to discuss a plan for the prompt resolution of this matter in its entirety.

**IT IS SO ORDERED.**

Dated: 8/26/2019

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge